Next case, Epel v. Mueller Mr. Koppes, is that how you say it? Yes. You may proceed. May it please the court, counsel. My name is Christopher Koppes. I represent the defendant, Joshua Mueller. Today, I'd like to begin my remarks with Argument 2 regarding jury selection and leave some time to discuss Argument 1 pertaining to the surveillance video. With respect to Argument 2, the state has conceded that the trial court violated Rule 431B, and so that leaves the only question for this court to be whether the evidence was closely balanced for plain error purposes. And if this court does find that the trial evidence was closely balanced, then that would be dispositive of this case and warrant a new trial. The issue of whether Mr. Mueller was the person who in fact committed this retail theft was a close question. The state's evidence that he was the offender was based almost solely on the weak identification testimony of Macy's loss prevention officer, Dana Womack. And the most important thing about her testimony is that she does not identify him, or the first and only time she ever identifies him is at trial a year after the offense takes place. He's sitting there in court at counsel's table. She never identifies him in a lineup or in a show-up or in a photo array. She never gives a description of the offender to police. She never describes any unique characteristics or distinguishing features that the offender had. So none of those usual indicia of reliability of an identification are present in this case. So aside from that weak identification, it's also important to note that Mr. Mueller was not in possession of the stolen merchandise. He was not arrested on the scene or anywhere near the scene. In fact, there's no evidence whatsoever about his arrest. And Mueller gives no incriminating statement to the police or to anyone else. One other thing that's important to note has to do with the state's only other witness in this case, the police officer, Lomax. His testimony really doesn't add anything here. He does not identify Mueller. He does not testify about Mueller's arrest. There's no evidence about his arrest, in fact. All he says is that he came to the store, watched the video, and saw a person he could identify. He never says who that person was? He never says who that person was. And so it really adds nothing to the state's case whatsoever. Okay. So we're left with really weak identification and a lot of really significant gaps in the case, leaving the evidence truly closely balanced for purposes of plain error review. The only other evidence in this case, and I guess this can bring me to the first argument, is the surveillance videotape. Ms. Fomich testified that she watched the person as he walked through the store. Well, she alternately watched him through the store and in the office on their security monitors. And she says that while she was viewing him on the security monitors, she was able to zoom in and get a good look at his face. And during the deliberations, the jury asked to see this video, this video that supposedly can show, I guess the video—back up for a second— this video that the state introduces at trial is a brief 40-second clip. It's extremely grainy. It does not really show the offender's face. And I take it it's not being shown on the same equipment that the witness would have been looking at in the store. Presumably not. I don't know, but I'm assuming it's copied to a separate tape or something or a DVD. Right, on a DVD, and I assume on a computer screen of some sort, whether it be a laptop or computer monitor. And so during deliberations, the jury asks to see that video. So the trial court brings them back into open court and replays this 40-second video. And at that time, three jurors express to the court that they wish to see the video better, whether it be by pausing or freezing or enlarging the picture on the screen. And each time the court refused. Didn't he bring it closer on the second showing? When he brought them into court, he did bring it closer, and that was the juror's original request, to see this more closely. But even before the trial court hit play during deliberations, one juror asked to pause it or freeze it at a certain point or enlarge it, and the court said no. And after they viewed the video, two more jurors chimed in and said that they needed a better view. Once again, the court said no. And just to make sure I understand with complete clarity, it was a one-word answer. Correct. Most times there was nothing beyond nope or before or after. Okay. I just want to make sure. Nothing else at all. So the court here made it clear that he was refusing or essentially made it clear to the jury that he wouldn't allow them to view the video any better than they were already seeing it, no matter how they asked. So the state's argument before this court is that it would have been improper for the trial court to show the jury a version of the video that they had not seen during the trial. And there are a few problems with this argument. The first one being is that after a trial, during deliberations, the jury gets to examine evidence all the time. I mean, that's the role of the jury. The jury gets to examine the evidence more closely. They can reorder the evidence. They can reenact certain parts of the evidence. So if we're going to test the jury with finding out the truth of what happened and ensuring that the state has proven its case beyond a reasonable doubt, we want to encourage them to take a close look at the case and not interfere, as the trial judge here did, with their attempt to view the video more closely. It's also important to remember that the state offered this evidence, in its own case in chief, as proof of guilt. This was the state's own exhibit. So this wasn't a situation where the jury was asking to create new evidence or wildly modify some other piece of evidence. What was said at the trial level by defense counsel about the video issue? Anything? During closing argument, defense counsel talked about this and remarked about sort of the grainy nature of the video and how you certainly couldn't tell that this was Joshua Mueller on the video. She said you can look at it. You can't even tell if it's a man or a woman. So she was using the video to undermine Ms. Woolman's testimony, but she was able to use this video to get a clear look at the offender as he watched throughout the story. So defense counsel didn't have an objection to the way the trial court handled the video issue? Neither party chimed in at that point. This was, again, in the middle of deliberations, so you can kind of understand the party's hesitation to chime in at that point, but no, neither party stepped in. So it's part of the reason we're asking this court to review it for plain error. But another point is that, you know, a case out of the First District, People v. Rouse, makes an excellent point that, you know, our jury system depends on us having trust in the jury to be able to handle evidence and follow the instructions. And so really the better approach here would have been— and by the way, Rouse deals with a factually kind of similar case involving the jury's viewing of a surveillance video in open court during deliberations. So the better procedure there, says the appellate court, would have been to simply give the jury the video and let them watch it during deliberations, however they see fit. And certainly that's something that the trial court could have done here but did not. Do we know from the record whether it could have been paused? I mean, were we operating with a media and a media player of some type that could have paused it? There's no indication that there wasn't that opportunity. And I think sort of, you know, common experience tells us that we can, you know, watching any sort of video, whether it be on DVD or on YouTube or the like, you can pause it. And again, with this being a video presumably on a computer screen, you could potentially make the picture larger. You could have allowed the jury, again, to take this back into deliberations with them to give them, you know, the opportunity to view it even more closely. You know, if there were impediments, the trial court certainly didn't express those during the deliberations. He simply gave sort of a perfunctory note which indicated, you know, almost like a policy or, you know, flat-out refusal to assist the jurors, even after a quarter of them expressed to the judge that they wanted to see this video better, this video that shows the offense taking place. Some of the cases in our opening brief pertain to jury requests of transcripts. And so one of the state's arguments is, well, transcripts are different. You know, this case is different from those cases dealing with transcripts. But I think that sort of only highlights the nature of the error here. You know, this isn't something where the trial court would have to order the transcript prepared, sort of question the materiality of the transcripts and that sort of thing. You have a video that's right in front of the jury that the trial court is operating. It's an exhibit. It's just a matter of seeing better what's already right in front of them. And so the fact that you'll come back in rebuttal. Thank you, counsel. You'll have an opportunity to do rebuttal. Ms. Shanahan. Mayor of Peace Court, counsel, my name is Sharon Shanahan, and I represent the people of the state of Illinois. As defense counsel, I both agree the important thing here in both issues is prejudice. And so I'm going to start there because there's so much evidence in this case against the defendant. We have security worker Dana Womick, whose job it is, it's her job to watch for shoplifters. And she and her co-worker first see the defendant through these cameras. She sees them because they're carrying empty tote bags and the woman's got several items draped over her arm. The woman leaves the store, but the defendant stays on. She continues to watch him both in camera and in person. By the way, their cameras have the ability to zoom in. So she could get very close in and see who she's looking at. So she can actually see the defendant's face when she zooms in. When she went down on the floor, she was within a few feet of him. She followed him and observed him for about a half hour. She's got a co-worker on the cell phone with her. They're kind of talking back and forth with the co-workers watching the cameras, and she's following the defendant. And she unequivocally stated that the person that she saw take those garments and leave the store was the defendant. So that's pretty strong evidence. Officer Lomax did have a great omission in his testimony. Somebody needed to ask him another question. Yes, they did. I agree, they did. But here's the thing that he did say. He said that he watched the surveillance footage. He said that he was able to identify someone. And he said that he arrested the defendant. No, he did not say the person I identified was the defendant, but... Did he say the person I identified is the one I arrested? He did not say that. But I think you get my point. I think you get my point, is that he says he watched the surveillance video. He says he identified someone, and then he immediately goes and arrests the defendant. So I think that it is implicit. I think the jury could reasonably infer that the person that he identified after watching the video was the defendant. So I think we've got, as far as the prejudice prong, I think the defendant has a real problem in both issues. Moving to the video, we need to remember here that the issue that the defendant has raised is that the trial court thought that he couldn't do this. That he... Had no discretion. Yes, he had no discretion. And Justice Moore, you asked, didn't he move it closer when they came back in? Yes, he did. They said, can we see the video again? He said, yes. Can we see it closer? Yes. Can we pause it? No. You allow one thing, you don't allow another thing, that shows that he knew. He knew he could let them see it again. He knew he could let them see it closer. And he knew he could pause this, but he chose not to. And that's discretion. And the standard of abuse of discretion is the highest standard of review that we have. And I think that it's very clear that he knew he had discretion as to what to do as far as allowing the jurors to see the film again. Now... This case really gets very simple when you look at it that way. And... The... There's no prejudice here. And I think it's very important to consider the fact, and again, Justice Moore, you asked this question. Did defense counsel say anything about this when it happened? He didn't say anything. When the jurors said, can we pause it? And the judge said, no. Defense counsel didn't say, wait, why not? I want him to see it closer. And defense counsel's had this video clip. He's watched it. In fact, he's paused it. And... He definitely didn't object and maybe had a reason for that. Well, that's why it's plain error review. Because there wasn't a contemporaneous objection. Yes. You know, and there's no claim of ineffective assistance of counsel. But the very... Not objecting goes both... Can be considered, I think, for two different reasons. One, it makes it plain error. But two, we need to give some consideration about why might a defense counsel have chosen not to object. And I think... Where do we give that consideration in plain error review if the trial judge erred? Let's just assume he did. Did he practice fraud? Because not choosing... Defense counsel's decision not to object shows that he didn't think that the trial court made any error? Well, let me ask you a question, I think, that goes to both issues. On whether or not the evidence was closely balanced. Should we consider the fact that the jury, during deliberations, asked to come out and look at the video again? In determining whether or not the evidence was closely balanced? They seem to have a question. They... You can consider that as a factor. But given the fact that, starting from opening argument, all the way through this trial and into closing argument, the defendant's theory of this case was that that video didn't matter because it wasn't clear. They... That's in... I thought it was they didn't prove that it was the defendant because it wasn't clear. Yes, that's right. And I'm just saying, in opening argument, in the cross-examination of the Macy's employees, and in closing argument, defense counsel's argument was that the video doesn't add anything to the state's case because it's not clear. Because it's blurry. So why would you want the jury to have even more chance to decide, well, how blurry is it? Let's stop and look at it. Let's see if it's clear now that it's closed. That's his... I mean, it's not his... His theory, obviously, is that the defendant didn't do it. But he has to do two things to prove that. And one is to refute the security witness. And the other one is to say that video doesn't prove anything. It's blurry, you can't see it. You can't even... He... She, I think it was, says you can't even tell whether it's a man. That's a big part of her attacking this video was the bad quality of it. So it's a little hard to attack a judge's discretion or to argue that he doesn't even have... Didn't even realize he had discretion when a more logical interpretation is that... Okay, I haven't heard anything from the defense counsel saying... I want them to hear... To pause this thing. I'm not going to interfere with their theory of the case. It would be better if the judge would have expressed why he wasn't going to allow it. Then we'd know. I could have said that in the last case, too. And in virtually every case, if a trial court told you why it decided what it did, our job, your job, would all be easier. But the fact that he didn't, it's just a very simple fact. And we get back to the other thing is that you don't even need this video. You could have meant the player doesn't have a pause button on it. That's a terrible pause button. Nobody knows how to use the pause button. The pause button doesn't work. There are so many reasons why this video didn't have to be paused. And there is such a dearth of evidence that indicates that the trial court thought he didn't have discretion to allow this. And even if it's an error, it didn't hurt anything. I mean, you don't get testimony like this woman. Now, the defendant says it's close. I disagree. Any other questions? Thank you, Counsel. Mr. Kopass. Thank you, Your Honors. If I may, I'd like to just respond to a few of the points the counsel made. First, with regarding to discretion. The fact that the trial judge moved the screen closer doesn't necessarily show the exercise of any discretion with respect to the juror's other questions. And the juror's original note to the jury or to the trial court asked to view it more closely. And so the trial court moved it 10 feet closer. Then immediately, even before it's played, the court says, get the lights, please. And a juror says, wait, is there any way you can extend that so that it's expanded a little more? Nope. And they play the video and then a couple more jurors chime in. Could you freeze it, freeze frame? Nope. So, I mean, obviously, what the judge had done was not good enough to give the jury the view that they were looking for. So the judge certainly refused to exercise discretion here. With regard to sort of the prejudice of this, you know, it'd be one thing if the video just, you know, didn't show the offense that well or, you know, was grainy or didn't show the offense at all. That would be one thing. But the video's important here because it affirmatively undermines Ms. Womack's credibility as a witness. That she was able to sort of run back and forth between following him around the store and then going up in the video room and following him on the video monitor. And she said she was able to zoom in and see his face and see the color of his eyes. This video certainly does not reflect that. And so it's a big hit on her credibility in that way. With regard to Officer Lomax, we all agree that he did not, you know, say much of anything. But, you know, I do take a little issue with the idea that he can sort of infer identification testimony. I think that'd sort of be kind of unfair to the defendant for us to unappeal and sort of infer from the evidence that there was another witness identification. And then I guess the final point, and I think Your Honor already sort of addressed this, you know, whether defense counsel objected or not, you know, or made a strategic decision or not, you know, simply not a part of this analysis where it's just simply was there error and was there plain error. So, you know, whether defense counsel had a strategy or not is simply not part of the analysis. And again, I'd remind the Court that this was during deliberations. So for any party to chime in would sort of be a difficulty. They should if they want to preserve their record. Right. But it's always touchy to do so during deliberations. But again, that's not part of this Court's analysis. As you noted, it's error and plain error. So if this Court has no other questions, we would ask that you reverse this condition and remain through the trial. Thank you, counsel. We'll take the matter under advisement and issue a decision in due course. Thank you.